UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HUY VAN TRAN,

     Petitioner,

v.

PAMELA BONDI, et al.,

     Respondents.

Case No. 2:25-cv-02335-DGE-TLF

REPORT AND RECOMMENDATION

Noted for December 31, 2025

Petitioner Huy Van Tran petitions the Court under 28 U.S.C. 2241 for relief from physical custody by Immigration and Customs Enforcement ("ICE"). Dkt. 2. On November 20, 2025, petitioner, through counsel, filed a petition for a writ of habeas corpus under 28 U.SC. § 2241, arguing: (1) his continued detention violates the Due Process Clause of the Fifth Amendment and contravenes the reasonableness standard set by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) the government has no authority to remove him to any country other than Vietnam -- and any attempt to carry out removal to a third country requires notice and a meaningful opportunity to be heard in reopened removal proceedings, as mandated by statute and the Constitution; and (3) ICE's recently implemented third-country removal policy[1] is inherently punitive and therefore unconstitutional under the Fifth and Eighth

---

[1] On July 9, 2025, ICE issued an internal memorandum on third-country removals, changing its longstanding procedure in light of the U.S. Supreme Court granting the Government's application to stay the district court's nationwide preliminary injunction in *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-CV-10676-BEM, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025). *See* Dkt. 2-5.

REPORT AND RECOMMENDATION - 1

Amendments, as explained in *Wong Wing v. United States*, 163 U.S. 228, 237 (1896). *Id*. Dkt. 2. The undersigned, after reviewing the briefing and declarations submitted by both parties, recommends GRANTING the petition in part.

## I.   BACKGROUND

### A.   Petitioner's Re-Detention

Petitioner is a Vietnamese national who emigrated to the United States in 1991 to escape persecution and has lived in the U.S. since. Dkt. 2 at 8.

On February 28, 2017, petitioner was sentenced to 96 months in custody and five years of supervised release after pleading guilty to Conspiracy to Distribute Controlled Substances. Dkt. 10, Declaration of Alixandria Morris, Exhibit 1 at 3. On December 22, 2020, an immigration judge denied petitioner's application for asylum, withholding of removal under the Immigration and Nationality Act ("INA") and Convention Against Torture and Deferral of Removal under the Convention Against Torture, and ordered petitioner removed to Vietnam. Dkt. 9, Declaration of Wiley Brown, at ¶ 6.

As a result of this criminal activity, petitioner was placed in removal proceedings and issued a Notice to Appear ("NTA"). Dkt. 10 at Exhibit 1. On July 19, 2021, the Board of Immigration Appeals summarily dismissed petitioner's appeal to the December 22, 2020, order of removal to Vietnam. Dkt. 9 at ¶ 5; Dkt. 10 at Exhibit 3. His removal became final on July 19, 2021. *Id.* He was released from his custodial sentence on October 3, 2022, to ICE custody and released three months later to begin his term of supervised release. Dkt. 9 at ¶9.

REPORT AND RECOMMENDATION - 2

On August 20, 2025, ICE arrested petitioner when he voluntarily reported to ICE in accordance with his Order of Supervision. *Id.* at ¶10; Dkt. 10 at Exhibit 2. Petitioner has been detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington since then. Dkt. 2.

Petitioner filed this habeas corpus petition on November 20, 2025, seeking the following: (1) immediate release from custody; (2) an Order that respondents cannot re-detain petitioner without first holding a hearing before a neutral decisionmaker at which the government bears the burden of establishing flight risk or danger to the community by clear and convincing evidence based on changed circumstances since petitioner was previously released; (3) an Order that respondents may not remove or seek to remove petitioner to a third country without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings; and (4) Order that respondents may not remove petitioner to any third country because respondents' third-country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm. Dkt. 2.

Respondents filed their return on December 5, 2025; petitioner filed his traverse on December 8, 2025. The petition is now ripe for consideration.

**B. Deportation of Vietnam War Refugees**

After the Vietnam War, many Vietnamese people "fled the country to escape political persecution." *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020). Until 2008, Vietnam refused to repatriate Vietnamese immigrants whom the United States had ordered removed. *Id.* In 2008, the United States and Vietnam reached an agreement under which Vietnam agreed to consider repatriation requests for Vietnamese

REPORT AND RECOMMENDATION - 3

immigrants who had arrived in the United States after July 12, 1995. *Id.* This meant that Vietnamese immigrants who had arrived before that date would not be considered for repatriation. *Id.*

Until 2017, ICE "maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them." *Id.* Thus, ICE typically detained pre-1995 Vietnamese immigrants for no more than ninety days after their removal orders became final. *Id.* After that time expired, most detainees were released on orders of supervision. *Id.*

In 2017, the United States and Vietnam began to renegotiate the 2008 agreement. *Id.* Though the 2008 agreement was not formally amended, Vietnamese officials "verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them." *Id.* In accordance with this change, ICE began detaining pre-1995 Vietnamese immigrants for longer than ninety days after their final orders of removal. *Id.* at 1083–84. ICE reasoned that Vietnam might issue the necessary travel documents for repatriation. *Id.* at 1084. ICE also began re-detaining some individuals who had been released on orders of supervision. *Id.* But this policy did not last long. *Id.* In 2018, following additional meetings between United States and Vietnamese officials, "ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely." *Id.* ICE accordingly instructed field offices to release pre-1995 Vietnamese immigrants within ninety days of a final order of removal. *Id.*

REPORT AND RECOMMENDATION - 4

In 2020 the policy changed again when the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting pre-1995 Vietnamese immigrants. Dkt. 2 at Exhibit 2. It provides that any "individual subject to a final order of removal from the United States" is eligible for acceptance of return by Vietnam if they also meet the following conditions, among others:

    1. Has Vietnamese citizenship and does not have citizenship of any other country at the same time;

    2. Has violated U.S. law and has been ordered removed by a U.S. competent authority (and, if sentenced to a prison term, the individual must have completed any term of imprisonment before removal or a U.S. competent authority must have ordered a reduction in the sentence or the individual's release from prison);

    3. Resided in Viet Nam prior to arriving to the United States and currently has no right to reside in any other country or territory.

    4. [REDACTED]

Petitioner submitted a declaration dated October 30, 2025, from Katie Hurrelbrink, submitted in support of another petition in this district, *Ha Thu Thi Nguyen v. Bondi, et al.*, CV25-1833-JNW. Ms. Hurrelbrink avers, "I have never seen Vietnam respond to a travel document request within 30 days. In mid-September (September 15 and September 17), ICE requested travel documents for two of my clients. Today, approximately a month and a half later, neither have received notice that Vietnam issued travel documents." Dkt. 2-4 at ¶7.

Petitioner submitted another declaration dated August 14, 2025, from Tin Thanh Nguyen that was filed in *Phong Thanh Nguyen v. Scott, et al.*, C25-cv-1398-TMC-SKV.

REPORT AND RECOMMENDATION - 5

1  Mr. Nguyen states he has worked on or assisted with hundreds of cases of pre-1995
2  arrival Vietnamese immigrations for whom the U.S. government requested travel
3  documents from Vietnam, and he estimates travel documents were issued in only a
4  handful of cases. Dkt. 2-3 at ¶11. This year, Mr. Nguyen has worked with or assisted on
5  cases of almost a hundred pre-1995 individuals from whom ICE has requested travel
6  documents from Vietnam, and he has yet to see Vietnam issue a travel document within
7  30 days or less. *Id.* at ¶12. He has seen Vietnam issue travel documents within 30 days
8  to individuals who arrived *after* 1995. *Id.* As of August 14, 2025, Mr. Nguyen states
9  there were an estimate of 300 pre-1995 Vietnamese individuals detained in ICE
10 custody, and at least 160 have been held in detention for more than 30 days. *Id.* at 16.

**C.  ICE's Request for Travel Documents**

In support of its return, ICE submitted a declaration from Wiley Brown, a Deportation Officer at NWIPC working for ICE's Office of Enforcement and Removal Operations. Dkt. 9. Mr. Brown states, "Per ERO headquarters guidance, there is now a significant likelihood of removal to Vietnam in the reasonably foreseeable future, as a result Petitioner's OSUP was revoked, he was taken into DHS custody for travel document acquisition and removal to Vietnam and transferred to the NWIPC, where he is currently detained." *Id.* at ¶10.

On October 17, 2025, the Travel Document Request ("TDR") package was sent for translation. *Id.* at ¶11. On October 24, 2025, the TDR package was received back from translation. *Id.* at ¶12. On December 5, 2025, the TDR package was sent to Removal and International Operations ("RIO") for review. *Id.* at ¶13. After the review is complete, Mr. Brown states the TDR package will be forwarded to the government of Vietnam by

REPORT AND RECOMMENDATION - 6

1  the ERO Attache in Vietnam. *Id.* Respondents did not clarify how long RIO's review of
2  petitioner's TDR package would take or how quickly the TDR is sent to the government
3  of Vietnam by the ERO Attache in Vietnam after RIO has completed its review.
4      In Mr. Nguyen's declaration, he states the process for the government of Vietnam to
5  issue a travel document often takes many months to complete because it involves both
6  the Ministry of Foreign Affairs and Ministry of Public Security, and it involves local police
7  conducting interviews and site-visits with the petitioner's relatives in Vietnam. Dkt. 2-3 at
8  ¶13. This process can take even longer for individuals who entered the United States
9  prior to 1995 and do not have relatives in Vietnam who can verify their identity. *Id.*
10     Mr. Brown states that based on his experience, Vietnam is currently issuing travel
11 documents within 30 days after TDR is provided to the government of Vietnam by the
12 ERO Attache in Vietnam. Dkt. 9 at ¶14. According to Mr. Brown's declaration, in Fiscal
13 Year 2024, ICE removed 58 final order Vietnamese citizens to Vietnam, and as of
14 September 11, 2025, ICE has removed 569 final order Vietnamese citizens to Vietnam
15 in Fiscal Year 2025. *Id.* at ¶17.

## II.    DISCUSSION

The Framers of the U.S. Constitution considered the writ of habeas corpus to be so critical to the protection of individual liberty that they identified specific and limited grounds for suspension of the writ. *Boumediene v. Bush,* 553 U.S. 723, 743 (2008). The writ of habeas corpus "protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account." *Id.* at 745. The Court has power to conduct meaningful review of the cause for detention and the executive's power to detain, and to issue an equitable remedy under the writ of habeas corpus that includes

release of the prisoner, and the means to correct errors in the government's process. *Id.* at 779-787.

"The writ of habeas corpus is the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action. Its preeminent role is recognized by the admonition in the Constitution that: 'the Privilege of the Writ of Habeas Corpus shall not be suspended. . .' U.S. Const., Art. 1, s 9, cl. 2. The very nature of the writ demands that it be administered with the initiative and flexibility essential to ensure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson,* 394 U.S. 286, 291 (1969).

### A. Petitioner's Re-Detention

The Immigration and Nationality Act ("INA") permits detention of noncitizens present in the United States during immigration proceedings. 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). A noncitizen who is ordered removed must be removed by DHS within 90 days, *id*. § 1231, and, during the removal period, the noncitizen must be detained, *id*. § 1231(a)(2). When the government fails to remove the noncitizen during that period, the statute only permits further detention of the noncitizen under certain conditions: (1) the noncitizen is "inadmissible" under certain grounds, (2) the noncitizen is "removable" as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy, or (3) the noncitizen has been "determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6); *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

Although ICE is permitted to hold noncitizens in detention beyond the initial 90-day window subject to certain limitations, the INA does not permit indefinite detention.

REPORT AND RECOMMENDATION - 8

*Zadvydas*, 533 U.S. at 682 (affirming that the INA limits the "post-removal-period detention to a period *reasonably necessary* to bring about [the noncitizen's] removal from the United States"). Furthermore, ICE may extend a noncitizen's detention only until "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. The Supreme Court has held that a six-month period of detention is presumptively reasonable. *Id*.

After six months of detention, a noncitizen seeking release from detention bears the burden of showing that "there is no reasonable likelihood of removal in the reasonably foreseeable future." *Id*. The burden then shifts to the government to present "evidence sufficient to rebut that showing." *Id*. If the government is unable to meet its burden, then the noncitizen must be released from detention. *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Re-detention is governed by 8 C.F.R. § 241.13(i), which provides that ICE may revoke a noncitizen's release under § 1231 and return them to ICE custody (1) for failure to comply with conditions of release, or (2) if, pursuant to a change in circumstances, ICE "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2).

Re-detention pursuant to § 241.13(i)(1) requires notice and an opportunity for the noncitizen to be heard. *Id*. (providing that after the noncitizen is notified of the reasons for the revocation of their release, the noncitizen must have an opportunity to respond to those reasons by "submit[ing] any evidence or information that [the noncitizen] believes shows there is no significant likelihood [they] will be removed in the reasonably foreseeable future, or that [they have] not violated the order of supervision"). Before re-

detaining a noncitizen, the government must consider the history of the noncitizen's compliance with the order of removal, the history of the government's efforts to remove noncitizens to the country in question, and the likelihood of the government's future success of effectuating removals of noncitizens to the country in question. *See* 8 C.F.R § 241.13(f) (setting forth the factors the government must consider when determining whether to revoke a noncitizen's release).

Petitioner is a noncitizen who has been present in the United States for 34 years. He is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. Having been detained for a total of six and a half months[2], petitioner's detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has satisfied the first component of the *Zadvydas* framework.

Petitioner has further shown that his removal to Vietnam is not reasonably foreseeable. *Zadvydas* determined that detention becomes "indefinite" when there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 701). Petitioner has shown that the Government detained him without securing a travel document from Vietnam and failed to make any progress toward obtaining one between August 20, 2025, and October 17, 2025. A specific date of removal has not been set. Without proof that Vietnam will accept petitioner, or that there is a reasonably estimated time frame for Vietnam to issue travel documents for petitioner, respondents' burden is not met. This is not simply uncertainty

---

[2] Petitioner has not been detained for a consecutive six and a half months. "A petitioner's total length of confinement need not be consecutive to reach the six-month presumptively reasonable limit established in Zadvydas." *Tang v. Bondi*, No. CV25-1473-RAJ-TLF, 2025 WL 2637750, at *4 (W.D. Wash. Sept. 11, 2025).

about the specific amount of time, nor is there any showing that petitioner has refused to cooperate; unlike the situation in *Diouf v. Mukasey*, the uncertainty in this case is about whether Vietnam will issue travel documents for petitioner at all.

Although respondents allege increased diplomatic cooperation between the United States and Vietnam (Dkt. 9 at ¶ 16), they do not present evidence that rebuts petitioner's initial showing. Mr. Brown avers as of September 11, 2025, ICE has removed 569 final order Vietnamese citizens to Vietnam in Fiscal Year 2025 but Mr. Brown provided no information about whether any of those data points are individuals in the category of pre-1995 Vietnamese immigrants, like petitioner. Mr. Tran has adduced evidence that over the past six months, Vietnam has not issued the necessary travel documents to Vietnamese citizens who entered the United States before 1995 within 30 days and that it is unlikely to do so in the imminent future. Dkt. 2-4 at ¶¶ 6-8; *see also* Dkt. 2-3 at ¶¶ 10-12 (stating that *none* of the over 100 pre-1995 arrival Vietnamese immigrants he has assisted this year received travel documents within 30 days). Additionally, Vietnam has not yet issued the travel documents necessary for Mr. Tran's removal, even though nearly 114 days have elapsed since the respondents re-detained petitioner. ICE is not permitted to hold petitioner indefinitely, waiting for a period that can be reasonably estimated, and where Vietnam's acceptance of petitioner and issuance of travel documents are pure speculation. *Zadvydas*, 533 U.S. at 682.

Second, petitioner's re-detention does not comply with the requirements set forth by 8 C.F.R. § 241.13(i) and 8 C.F.R. § 241.13(f). It is undisputed that Mr. Tran did not violate the conditions of his release. *See generally* respondent's brief (explaining the respondents' rationale for re-detaining Mr. Tran); *see generally* Notice of Revocation

(same). Although respondents argue that there is now a significant likelihood that Mr. Tran will be removed in the reasonably foreseeable future, it has not met its burden to present evidence supporting this claim. *See Zadvydas*, 533 U.S. at 701 (holding that, after the initial 90-day period and a six-month grace period, the burden is on the government to present sufficient evidence rebutting a noncitizen's assertion that there is not a significant likelihood of removal in the reasonably foreseeable future).

It also failed to provide Mr. Tran with notice of the revocation of his release prior to re-detaining him. 8 C.F.R. § 241.13(i)(3); *see* Notice of Revocation (establishing that ICE provided the notice to Mr. Tran after he arrived at the processing center). Finally, respondents fail to establish that they considered the criteria set forth in § 241.13(f) and that Mr. Tran's re-detention was not arbitrary. Indeed, although respondents assert in their response and the notice of revocation that they re-detained him because removal to Vietnam is likely to occur in the imminent future, petitioner's travel document request package was only just sent to RIO for review on December 5, 2025, and it has not been forwarded to the government of Vietnam yet.

Because petitioner has carried his burden and the Government has not rebutted it, the Court should rule that removal is not significantly likely in the reasonably foreseeable future. Continued detention therefore violates *Zadvydas*. Petitioner should be released subject to supervised release under conditions similar to conditions of his prior release.

**B. Third Country Removal**

Petitioner seeks two more forms of relief related to potential third-country removal. Dkt. 2 at 32-33. He asks the Court to: (1) order that respondents may not seek to

REPORT AND RECOMMENDATION - 12

remove him to any third country "without notice and a meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings," and (2) prohibit respondents from removing him to any third country at all on the ground that the current third-country removal policy is unconstitutionally punitive. See Dkt. 2 at 35.

1. Ripeness of Petitioner's Claim

The Government states, first, that petitioner's argument that he could be removed to a third country is without merit, speculative, and not ripe for review because there is no concrete indication that such removal to a third country will occur. Dkt. 8 at 6. The Government argues ICE is currently seeking a travel document solely to Vietnam, and there is no ongoing effort to remove petitioner to any third country. Id. Respondents state that ICE anticipates petitioner's removal to Vietnam will occur in the reasonably foreseeable future and believes that petitioner's travel document will be issued in the reasonably foreseeable future.

Nowhere in the Government's briefing or declarations do they provide a date of removal, how long RIO's review of petitioner's TDR package would take or how quickly the TDR is sent to the government of Vietnam by the ERO Attache in Vietnam after RIO has completed its review. These are circumstances courts have found sufficient to trigger review of third-country removal claims. See Nguyen, 2025 WL 2419288, at *13-15; Abubaka v. Bondi, No. C25-1889RSL, 2025 WL 3204369, at *10-*12 (W.D. Wash. Nov. 17, 2025). The harm petitioner seeks to avoid — summary transfer to a third country without notice or meaningful process — cannot be remedied once removal occurs. Louangmility v. Noem, No. 25-CV-2502-JES-MSB, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025) (citation omitted)).

2. <u>Due Process and Current Third-Country Removal</u>

The Government does not address petitioner's due process concerns regarding removal to a third country without notice and an opportunity to respond. Due Process forbids last-minute designation of a new removal country if the noncitizen has not been given a fair opportunity to address the risks of harms in that country. *See Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016) (citing *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999)); *El Himri v. Ashcroft*, 378 F.3d 932, 938 (9th Cir. 2004); *Sadychov v. Holder*, 565 F. App'x 648, 651 (9th Cir. 2014).

The July 9, 2025 memorandum allegedly allows ICE to remove a noncitizen to a country not designated in the removal order without providing notice, without reopening proceedings, and without affording any meaningful opportunity for the individual to respond. Dkt. 2 at Exhibit 5. Although ICE asserts that Vietnam is its present objective, petitioner remains subject to a final order of removal. Under 8 U.S.C. § 1231(b)(2), the government has statutory discretion to remove him to any permissible third country if removal to Vietnam becomes unavailable.

Respondents' position is essentially a promise that ICE will not attempt third-country removal because they are working on effectuating removal to Vietnam. This argument was rejected in *Nguyen* and *Abubaka*. In those cases, courts held that such unenforceable assurances are not enough to protect a petitioner's statutory and constitutional rights. *See Nguyen v. Scott*, No. 2:25-CV-01398-TMC, 2025 WL 2419288, at *27 (W.D. Wash. Aug. 21, 2025) (holding a voluntary promise not to attempt third-country removal unless and until Vietnam denies pending travel documents request insufficient.); *Abubaka v. Bondi*, No. C25-1889RSL, 2025 WL 3204369, at *6 (W.D.

Wash. Nov. 17, 2025) (holding "a voluntarily promise not to attempt third country removal….is insufficient to protect petitioner's statutory and due process rights").

Consistent with Ninth Circuit authority, courts have found that removal to a third country without meaningful notice and an opportunity to be heard is likely unconstitutional. *See Nguyen*, 2025 WL 2419288, at *19 (petitioner "likely to succeed" on due process challenge to third-country removal without notice and reopened proceedings); *J.R. v. Bostock*, 2025 WL 1810210, at *3 (W.D. Wash. June 30, 2025); *Phetsadakone v. Scott*, 2025 WL 2579569, at *4 (W.D. Wash. Sept. 5, 2025); *Baltodano,* 2025 WL 2987766, *3-*4. In *Abubaka,* where the Court considered a final ruling, it reaffirmed these principles and held that ICE may not remove a noncitizen to a third country without notice and an opportunity to respond. *Abubaka*, 2025 WL 3204369, at *9.

The Court recommends that respondents should be prohibited from removing petitioner to any third country (besides Vietnam) without first providing notice and a meaningful opportunity to respond in reopened proceedings.

3.  Punitive Nature of Respondents' Third-Country Removal Policy

Petitioner's third claim challenges the July 2025 third-country removal program as punitive in nature and execution, in violation of the Fifth and Eight Amendments. Dkt. 2 at 33. In several recent decisions, the Government's policies and practice of third-country removals has been held unconstitutional -- when petitioner has shown they are likely to face imprisonment (or harm) upon arrival. *See Abubaka*, 2025 WL 3204369, at *8; *Nguyen*, 2025 WL 2419288, at *23-24 (taking judicial notice of public statements by federal officials indicating that deportees sent to third-party countries have been

imprisoned and that the practice will continue); *Hambarsonpour v. Bondi,* No. C25-1802-RSM, 2025 WL 3251155, at *5 (W.D. Wash. Nov. 21, 2025) (agreeing with *Nguyen* and *Abubaka* that third-country removal paired with imprisonment or harm is punitive under *Wong Wing* and *Zadvydas*).

Petitioner asserts the respondents' program for removing individuals, as stated in an ICE memorandum issued July 9, 2025, is unconstitutional because the Government's purpose for this program is punitive. Dkt. 22 at 33. Petitioner contends:

> "The government has arranged for third countries to receive deportees and imprison them on arrival, possibly indefinitely and often in abhorrent conditions. It has selected countries notorious for human rights abuses and instability for third-country removal arrangements. It has targeted individuals with criminal convictions for third-country removals where they will be imprisoned and harmed and publicly broadcast those removals to demonize and dehumanize the individuals subjected to these practices and strike fear in the immigrant community to send a message of retribution and deterrence. Respondents' third-country removal program is more than a publicity stunt. The hundreds of individuals who have already been subjected to it have been banished in foreign prisons upon arrival without charge and often without communication with the outside world, including their families and lawyers. Respondents may not subject Petitioner to its third-country removal program designed to impose a severe punishment on its subjects. Such conduct 'shocks the conscience' under Fifth Amendment substantive due process, is cruel and unusual punishment, and may not be imposed without charge and a judicial trial."

*Id*.

If petitioner has evidence to support these claims, he potentially would be entitled to habeas corpus relief — if he can prove punitive intent under *Wong Wing*, 163 U.S. at 228.

Petitioner was convicted of a criminal offense that took place a decade ago. But, petitioner has not shown he is likely to face imprisonment (or harm) upon arrival and

REPORT AND RECOMMENDATION - 16

respondents offer no factual rebuttal and no defense to the petitioner's allegations concerning the third-country removal policy and petitioner's punitive intent claim.

The federal habeas corpus statute, 28 U.S.C. § 2243, allows the Court to "dispose of the matter as law and justice require. . . ." The mandate of habeas corpus is "broad with respect to the relief that may be granted." *Carafas v. LaValle,* 391 U.S. 234, 239 (1968). Because of the serious constitutional issues identified by petitioner, the Court recommends expanding the record, and potentially holding an evidentiary hearing to determine the purpose, operation, and effects of the July 2025 third-country removal program — or whatever the current third-country removal policies and practices apply to petitioner — as necessary to "dispose of the matter as law and justice require." *See generally, Hassoun v. Searls,* 1:19-CV-00370 EAW, 2020 WL 408349 (W.D. N.Y. January 24, 2020) (describing the authority for, and parameters of, an evidentiary hearing under 28 U.S.C. § 2241 in the context of an immigration-related habeas corpus petition).

The Court may expand the record to determine whether a punitive purpose exists, whether an evidentiary hearing is warranted, and whether additional habeas corpus relief should be granted.

## IV. CONCLUSION

For these reasons, the Court recommends the petitioner's federal habeas petition (Dkt. 2) be GRANTED in part. The Court recommends:

1. The Court should order respondents to release petitioner from immigration custody within 24 hours of the District Judge's entry of the final order, subject to the same conditions of petitioner's prior supervised release, and he shall not be re-detained unless an immigration court hearing with

REPORT AND RECOMMENDATION - 17

appropriate notice and due process is held, see *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. August 19, 2025);

2. Respondents should be ENJOINED from removing petitioner to any third country (other than Vietnam) unless they first provide petitioner with constitutionally and statutorily compliant notice, and a meaningful opportunity to respond and contest such removal in reopened removal proceedings; and

3. With respect to petitioner's claim that respondents' current third-country removal policy is punitive, the Court recommends an expansion of the record. If necessary, the district court may conduct an evidentiary hearing to resolve factual issues concerning the purpose, design, and effects of the July 2025 policy – or whatever third country removal policies and practices currently apply to petitioner — and whether the program operates with a punitive purpose or effect under *Wong Wing v. United States*, 163 U.S. 228 (1896) and *Zadvydas v. Davis*, 533 U.S. 678 (2001).

A proposed order accompanies this Report and Recommendation.

The parties have **14 days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations

omitted). Accommodating the above time limit, the Clerk shall set this matter for consideration on **December 31, 2025**, as noted in the caption.

Dated this 16th day of December, 2025.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19