UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

HUY VAN TRAN,

               Petitioner,

     v.

PAMELA BONDI et al.,

               Respondents.

CASE NO. 2:25-cv-02335-DGE-TLF

ORDER ADOPTING IN PART AND
DENYING IN PART REPORT AND
RECOMMENDATION (DKT. NO.
12)

## I       INTRODUCTION

Before the Court are Respondents' objections (Dkt. No. 15) to the Report and

Recommendation ("R&R") (Dkt. No. 12) of United States Magistrate Judge Theresa L. Fricke,

which recommends granting Petitioner Huy Van Tran's petition for writ of habeas corpus.  (Dkt.

No. 2.)  Petitioner filed a response to the R&R indicating he would not object to the R&R.  (Dkt.

No. 13.)  Respondents filed objections (Dkt. No. 15) and Petitioner responded to those objections

(Dkt. No. 16.)  For the reasons that follow, the Court ADOPTS in part and DENIES in part the

R&R.

1

## II    BACKGROUND

2
### A.  Factual Background

3    The Court refers to Judge Fricke's R&R for a more comprehensive recitation of the facts,

4    which the Court adopts here.  (Dkt. No. 12 at 2–7.)  To summarize, Petitioner is a Vietnamese

5    national who emigrated to the United States in 1991 "to escape persecution in Vietnam"

6    following the Vietnam war.  (Dkt. No. 2 at 8.)  On February 28, 2017, Petitioner pleaded guilty

7    to conspiracy to distribute controlled substances and sentenced to 96 months in custody with five

8    years supervised release.  (*Id.*)  On December 22, 2020, an immigration judge denied Petitioner's

9    application for asylum, withholding of removal under the Immigration and Nationality Act

10    ("INA") and Convention Against Torture and Deferral of Removal under the Convention

11    Against Torture, and ordered Petitioner removed to Vietnam.  (Dkt. No. 10-3 at 2.)  Because of

12    Petitioner's criminal conviction, he was placed in removal proceedings and issued a Notice to

13    Appear.  (Dkt. No. 10-1 at 1.)

14    On July 19, 2021, the Board of Immigration Appeals dismissed Petitioner's appeal of his

15    order of removal.  (Dkt. No. 9 at 2.)  On October 3, 2022, Petitioner was released from

16    incarceration and taken into Immigration and Customs Enforcement ("ICE") custody.  (Dkt. No.

17    2 at 9.)  On December 30, 2022, Petitioner was released from custody on an Order of

18    Supervision because there was not a significant likelihood of removal to Vietnam in the

19    reasonably foreseeable future.  (Dkt. Nos. 9 at 3; 10-4 at 2.)  Thereafter, Petitioner has been

20    gainfully employed as a forklift operator and supported his sons, wife, and parents up until his

21    re-detainment.  (Dkt. Nos. 2-1 at 5; 2 at 9.)

22    On August 20, 2025, Petitioner reported to Seattle ICE office as part of his Order of

23    Supervision reporting requirements.  (Dkt. No. 10-2 at 3.)  "Per ERO headquarter guidance," it

24

1    was determined "there is now a significant likelihood of removal to Vietnam in the reasonably

2    foreseeable future," and ICE "conducted a custody redetermination to bring [Petitioner] back

3    into custody for travel document acquisition and removal to Vietnam."[1]  (*Id.*)  Petitioner was

4    transported to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where

5    he remains today.  (*Id.*; Dkt. No. 9 at 3.)  On October 17, 2025, a travel document request

6    package was sent for translation.  (Dkt. No. 9 at 3.)  On October 24, 2025, the travel document

7    request was received back from translation, and on December 5, 2025, the request was "sent to

8    [Removal and International Operations ("RIO")] for review and to then be forwarded to the

9    government of Vietnam by the ERO Attaché in Vietnam."  (*Id.*)

10    **B.  History of Vietnam Refugee Removal**

11    Vietnam has long refused to accept for deportation Vietnamese nationals who came to the

12    United States as refugees before 1995.  (Dkt. No. 2 at 10–12) (discussing the history of

13    Vietnamese immigration to the United States as discussed in *Trinh v. Homan*, 466 F. Supp. 3d

14    1077, 1083 (C.D. Cal. 2020)).

15    On November 21, 2020, the United States and Vietnam entered into a Memorandum of

16    Understanding ("MOU") regarding pre-1995 immigrants.  (Dkt. No. 2-2 at 2, 7.)  The purpose of

17    the MOU is to "establish a process of review and issuance of travel documents for Vietnamese

18    citizens ordered removed from the United States and to facilitate the acceptance of all such

19    Vietnamese citizens[.] . . . The scope of this MOU is intended to apply to individuals who

20    arrived in the United States before July 12, 1995."  (*Id.* at 2.)  Section 4 of the MOU is titled

21

22    _____

[1] ICE indicates Petitioner was processed "as a Bag and Baggage" (Dkt. No. 10-2 at 4) but gives no indication as to what the "Bag and Baggage" policy is and whether it complies with 8 C.F.R. § 241.13(i).  This is second time the Court has seen this phrase without any explanation from Respondents.  *See Makuey v. Scott*, No. 2:25-CV-02135-DGE-BAT, Dkt. No. 10-7 at 4, 2025 WL 3028303 (W.D. Wash. Oct. 29, 2025).

23

24

ORDER ADOPTING IN PART AND DENYING IN PART REPORT AND RECOMMENDATION (DKT. NO. 12) - 3

1    "Eligibility for Acceptance of Return." (*Id.* at 3.) Section 4 states that Vietnam intends to accept

2    the removal of individuals who meet four conditions: the individual must (1) have Vietnamese

3    citizenship and not the citizenship of any other country; (2) have been ordered removed by the

4    United States and finished serving any U.S. prison sentence; and (3) have resided in Vietnam

5    before arriving in the United States and not have the right to reside in any other country. (*Id.* at

6    3–4.) The fourth mandatory condition is redacted from the publicly disclosed version of the

7    MOU filed by Petitioner (*see id.* at 4), and Respondents have not disclosed any information

8    about what that condition requires. Sections 5 and 6 of the MOU contain factors that the United

9    States intends to consider before requesting travel documents for a Vietnamese citizen and that

10   Vietnam intends to consider before accepting an individual ordered removed. (*Id.* at 4.) These

11   factors are also redacted and have not been disclosed in this litigation.

12           Section 8 of the MOU is titled "Procedures for Verification and Issuance of Travel

13   Documents." Under Section 8 of the agreement, ICE must request appropriate travel documents

14   from Vietnamese officials before removal. (*Id.* at 5.) The documentation package is expected to

15   contain a cover letter; the self-declaration form; a copy of the individual's final order of removal;

16   copies of records related to the individual's criminal convictions and incarceration, if applicable;

17   photographs and fingerprints; and copies of citizenship documents such as expired passports,

18   national identity cards, birth certificates, or expired travel documents. (*Id.*) After the request for

19   a travel document is received, Vietnam "intends to issue the travel document" within 30 days

20   "when the individual meets the eligibility criteria listed in Section 4 of this MOU." (*Id.*) For

21   individuals who do not meet the eligibility requirement, the MOU sets out a process through

22   which the United States and Vietnam will try to "resolve the case," which may include gathering

23

24

1    additional information, convening a working group, considering "the humanitarian and family

2    unity factors of the individual ordered removed," and conducting interviews.  (*Id.* at 5–6.)

3    **C.  Procedural History**

4          On November 20, 2025, Petitioner filed a petition for writ of habeas corpus, arguing (1)

5    his continued detention violates the Due Process Clause of the Fifth Amendment of the U.S.

6    Constitution; the INA, 8 U.S.C. § 1231(a); and its implementing regulations, 8 C.F.R. § 241.13;

7    (2) third country removal without meaningful notice and opportunity to respond violates the

8    Fifth Amendment's Due Process Clause, the INA, implementing regulations, the Convention

9    Against Torture, and the Administrative Procedure Act; and (3) the third country removal

10   program imposes punishment without a criminal trial, in violation of the Fifth and Eighth

11   Amendments.  (Dkt. No. 2 at 29–34.)  On December 16, 2025, Judge Fricke issued an R&R,

12   recommending Petitioner's petition for writ of habeas corpus be granted in part.  (Dkt. No. 12.)

13   Petitioner filed a response indicating he would not be objecting to the R&R.  (Dkt. No. 13.)

14   Respondents filed objections to the recommendations that: (1) Petitioner was entitled to notice

15   and an opportunity to respond before his Order of Supervision was revoked, (2) Respondents

16   were required to consider the factors in § 241.13(f) when determining whether to revoke

17   Petitioner's Order of Supervision, and (3) Petitioner's third country removal claims are ripe for

18   review.  (Dkt. No. 15 at 3–6.)

19                    **III    STANDARD OF REVIEW**

20   **A.  R&R**

21         A district court reviews *de novo* "those portions of the report or specified proposed

22   findings or recommendations to which [an] objection is made."  28 U.S.C. § 636(b)(1)(C); *see*

23

24

*also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition *that has been properly objected to*.") (emphasis added).

Objections to an R&R must be "specific."  Fed. R. Civ. P. 72(b)(2).  "[M]ere incorporat[ion]" of arguments from the underlying motions, without identifying "what portions of the R&R" the objecting party "considers to be incorrect," does not constitute a specific objection, *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012), and therefore does not give rise to a court's obligation to conduct a *de novo* review, *Brandon v. Dep't of Corr.*, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021).  "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation." *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B.  Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, No. 25-cv-1976, 2025 WL 1420131, at *7 (D. Minn.

May 14, 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

The detention, release, and revocation of supervised release of a noncitizen is governed by 8 C.F.R. §§ 241.4 and 241.13.  § 241.4 applies to noncitizens who have been ordered removed in general, while § 241.13 specifically applies to noncitizens whom the government has determined "there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future."  8 C.F.R. § 241.4(b)(4); 8 C.F.R. § 241.13(b)(1) ("Section 241.4 shall continue to govern detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no likelihood of removal in the reasonably foreseeable future.").

The government's discretion to revoke the release of a noncitizen whose removal was previously found to be unlikely in the reasonably foreseeable future is limited.  Specifically, a noncitizen "*who violates* any of the conditions of release *may* be returned to custody."  8 C.F.R. § 214.13(i)(1) (emphasis added).  Thus, under § 241.13(i)(1), absent a violation of an Order of Supervision, a noncitizen may not be returned to custody.  Similarly, the government "*may* revoke an alien's release . . . *if*, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.  8 C.F.R. § 214.13(i)(2) (emphasis added).  Thus, under § 241.13(i)(2), absent the government determining, on account of changed circumstances, that a noncitizen may be removed in the reasonably foreseeable future, a noncitizen may not be returned to custody.

Parallel to these limitations on the government's ability to revoke the release of a noncitizen whose removal is unlikely in the reasonably foreseeable future, the Supreme Court has held that the INA does not authorize "indefinite, perhaps permanent, detention" of

1    noncitizens subject to final orders of removal.  *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).  As

2    the *Zadvydas* court recognized, "[a] statute permitting indefinite detention of [a noncitizen]

3    would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process

4    Clause."  *Id.* at 690.  "Freedom from imprisonment—from government custody, detention, or

5    other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause

6    protects."  *Id.*  The *Zadvydas* court concluded, "once removal is no longer reasonably

7    foreseeable, continued detention is no longer authorized by statute."  *Id.* at 699.  The

8    "presumptively reasonable" period for detention following a removal order is six months.  *Id.* at

9    701.

10    　　　The presumptively reasonable period of detention does not reset each time a noncitizen is

11    detained; rather, the aggregate time in detention post removal order is considered.  *Nguyen v.*

12    *Scott*, 796 F. Supp. 3d 703, 721722 (W.D. Wash. 2025) (rejecting argument that detention period

13    resets every time a noncitizen is detained); *Giorges v. Kaiser*, No. 25-cv-7683, 2025 WL

14    2898967, at *8 n.5 (N.D. Cal Oct. 10, 2025) ("When calculating time spent in detention, courts

15    aggregate nonconsecutive detention periods.  The clock does not restart each time that a

16    nonconsecutive detention begins for a noncitizen."); *Sied v. Nelson*, No. 17-cv-06785-LB, 2018

17    WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (collecting cases).

18    **IV    DISCUSSION**

19    　　　Judge Fricke recommends (1) granting Petitioner's petition for writ of habeas corpus in

20    part and ordering Respondents to release Petitioner, (2) enjoining Respondents from removing

21    Petitioner to any third country without notice and an opportunity to respond, and (3) expanding

22    the record as to Petitioner's claim that Respondents' third country removal policy is punitive.

23    (Dkt. No. 12 at 17-18.)  Respondents object to the R&R's conclusions that (1) Petitioner was

24

entitled to notice and an opportunity to respond before his Order of Supervision was revoked, (2) Respondents were required to consider the factors in § 241.13(f) when determining whether to revoke Petitioner's Order of Supervision, and (3) Petitioner's third country removal claims are ripe for review. (Dkt. No. 15 at 3–6.) The Court reviews *de novo* the R&R's analysis of Petitioner's (1) Fifth Amendment due process claim (2) Fifth Amendment third country removal claim, and (3) Fifth and Eighth Amendment punitive third country banishment claim. The Court agrees Petitioner's petition for writ of habeas corpus should be granted and does not reach Petitioner's third country removal claims because they are not ripe for review.

### A. Petitioner's Re-Detention

The Court declines to adopt the analysis contained in the R&R, and instead grants Petitioner's petition for writ of habeas corpus on procedural due process grounds.[2]

The Due Process Clause of the Fifth Amendment protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. CONST. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

---

[2] Respondents objected to the R&R's conclusion that Respondents must consider the factors set forth in § 241.13(f) before re-detaining a noncitizen. (Dkt. Nos. 12 at 10; 15 at 4.) Though the Court grants the petition on other grounds, it notes § 241.13(i)(3) states, "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." Thus, Respondents are required to evaluate the facts upon revocation, and it is plausible that this evaluation should follow the same criteria used in determining release originally as set forth in § 241.13(f).

1    The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*,

2  424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the

3  immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir.

4  2022). "The fundamental requirement of due process is the opportunity to be heard 'at a

5  meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong

6  v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates "the

7  specific dictates of due process generally requires consideration of three distinct factors:"

8      First, the private interest that will be affected by the official action; second, the
       risk of an erroneous deprivation of such interest through the procedures used, and
9      the probable value, if any, of additional or substitute procedural safeguards; and
       finally, the Government's interest, including the function involved and the fiscal
10     and administrative burdens that the additional or substitute procedural
       requirement would entail.
11
   *Mathews,* 424 U.S. at 335.
12
       1.    Private interest
13
       The first *Mathews* factor considers "the private interest that will be affected by the
14
   official action." *Id.* Petitioner says this factor weighs in his favor because his private interest—
15
   his release from initial detention—was affected when he was redetained in 2025. (Dkt. No. 2 at
16
   30.) Freedom from detention "is the most elemental" of private interests affected by official
17
   action. *Hamdi*, 542 U.S. at 529; *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—
18
   from government custody, detention, or other forms of physical restraint— lies at the heart of the
19
   liberty that [the Due Process] Clause protects."). So it is unsurprising "[t]he Supreme Court has
20
   repeatedly recognized that individuals who have been released from custody, even where such
21
   release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F.
22
   Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). Consequently, when Petitioner was
23
   released from ICE custody on an Order of Supervision in 2022, he "took with him a liberty
24

interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause." *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025).

The fact that Respondents allowed Petitioner to remain in the community for almost three years after issuing an Order of Supervision on December 30, 2022 only strengthens this interest. *See Dejesus v. Bostock*, No. 25-CV-01427-JHC-TLF, 2025 WL 3268002, at *3 (W.D. Wash. Nov. 24, 2025). Petitioner, who had taken steps to turn his life around upon release from incarceration, has now been undeniably deprived of this interest because he was arrested, transferred to the NWIPC, and remains detained today. Accordingly, the first *Mathews* factor favors Petitioner.

2.  Risk of erroneous deprivation of interest through procedures used

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" 424 U.S. at 335. The risk of an erroneous deprivation is not only high in this instance, it appears to have materialized.

Respondents rely on § 241.13(i)(2) as the basis for Petitioner's revocation of release. (*See* Dkt. Nos. 9 at 3; 10-2 at 3.) Respondents contend ICE properly revoked Petitioner's release because at the time of his revocation, there was a "significant likelihood of removal to Vietnam in the reasonably foreseeable future." (Dkt. No. 10-2 at 3.)

The August 20, 2025 re-detention documentation states, "Per ERO headquarters guidance, there is now a significant likelihood of removal to Vietnam in the reasonably foreseeable future. As such, ERO Seattle conducted a custody redetermination to bring [Petitioner] back into custody for travel document acquisition and removal to Vietnam." (Dkt.

1    No. 10-2 at 3.)  But the first time ICE took any steps to initiate the process to potentially obtain a

2    travel document from Vietnam was on October 17, 2025, almost 60 days *after* ICE "revoked"[3]

3    Petitioner's release.  (Dkt. No. 9 at 3.)  Moreover, it was not until December 5, 2025 that ICE

4    submitted a travel document request to RIO for review and then to be forwarded to the

5    Vietnamese government.  (*Id.*)  Furthermore, as of today's date, absent from the record is any

6    indication when, if ever, a travel document to Vietnam will be issued.  Respondents also offer no

7    individualized assessment as to whether Petitioner meets the criteria for repatriation under the

8    MOU.  Thus, undeniably, on August 20, 2025, Respondents were not authorized to revoke

9    Petitioner's release under 8 C.F.R. § 241.13(i)(2) because on that date they had no basis to

10   conclude the existence of changed circumstances indicating there was a significant likelihood

11   Petitioner would be removed in the reasonably foreseeable future.

12          Respondents contend it is actively working to obtain a travel document to remove

13   Petitioner to Vietnam.  (Dkt. No. 8 at 7.)  Deportation Officer Wiley Brown states in his

14   declaration, seemingly without a sufficient basis, that "Vietnam is currently issuing travel

15   documents within 30 days after the travel document request ("TDR") is provided to the

16   government of Vietnam by the ERO Attaché in Vietnam."  (Dkt. No. 9 at 1, 3.)  The declaration

17   further stated Vietnam had "agreed to increase cooperation with the United States and issue

18   travel documents within 30 days."  (*Id.*)  Officer Brown states there have been 569 removals of

19   Vietnamese citizens in 2025 (*id.*) but provides no information regarding the total number of the

20   requests they have recently submitted to Vietnam, whether these involved pre-1995 Vietnamese

21   immigrants like Petitioner, or how many individuals are still awaiting removal despite

22

23   _____
     [3] Absent from the record is a copy of the Notice of Revocation Respondents issued to Petitioner
24   on August 20, 2025, which presumably identifies the basis for revocation.

ORDER ADOPTING IN PART AND DENYING IN PART REPORT AND RECOMMENDATION (DKT. NO. 12) - 12

1    Respondents' request to Vietnam.  Officer Brown states, "Because the Government of Vietnam

2    is cooperating with the United States in issuing travel documents, DHS believes there is a

3    significant likelihood of Petitioner's removal in the reasonably foreseeable future."  (*Id.* at 4.)

4    Again, Respondents have not provided any evidence as to whether Petitioner meets Vietnam's

5    eligibility requirements discussed in the MOU, such as whether Petitioner has Vietnamese

6    citizenship.  (*See* Dkt. No. 2-2 at 3–4.)

7        Accordingly, the Court finds and concludes that detaining Petitioner on August 20, 2025,

8    and continuing to detain him without properly applying 8 C.F.R. §§ 241.13(i)(2) has created a

9    significant risk of an erroneous deprivation of Petitioner's liberty interest.  The second *Mathews*

10   factor favors Petitioner.

11       3.    Government's interest

12       The third *Mathews* factor contemplates "the Government's interest, including the

13   function involved and the fiscal and administrative burdens that the additional or substitute

14   procedural requirement would entail."  424 U.S. at 335.

15       Respondents have an interest in ensuring a noncitizen with a final order of removal

16   appears when necessary to facilitate their removal and in ensuring the noncitizen is not a danger

17   to the community.  *Zadvydas*, 533 U.S. at 690 (government has an interest in "ensuring the

18   appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the

19   community").  But those interests are contemplated and met by the specific requirements

20   outlined in § 241.13(i)(2), which Respondents did not follow in revoking Petitioner's release.

21   Accordingly, the Court finds that the government's interest in re-detaining a noncitizen, who has

22   not violated the terms of their release nor whose removal is likely to occur in the reasonably

23   foreseeable future, without a pre-detention hearing or some other pre-detention process is low.

24

1   *See Wamsley*, 2025 WL 2402130, at *5 ("the Government's interest in re-detaining non-citizens

2   previously released without a hearing is low") (citing *Ortega*, 415 F. Supp. 3d at 970). And

3   although requiring a pre-detention process in this case would present some administrative

4   burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake,

5   providing effectively no pre-detention process—as ICE did here—is constitutionally deficient.

6           In sum, all three *Mathews* factors favor Petitioner. Respondents' detention of Petitioner

7   with apparently no process at all violates the due process protections afforded to him by the

8   Constitution. As a result, Petitioner has proven by a preponderance of the evidence that he is "in

9   custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

10  § 2241(c).[4]

11          **B. Third Country Removal**

12          Petitioner's other claims for relief challenge the legality of his potential removal to a third

13  country under the Fifth Amendment, the Eighth Amendment, 8 U.S.C. § 1231, the Convention

14  Against Torture, the Administrative Procedure Act, and the relevant implementing regulations.

15  (Dkt. No. 2 at 32–33.) Judge Fricke concluded Respondents should be prohibited from removing

16  Petitioner to any third country without first providing notice and an opportunity to respond.

17  (Dkt. No. 12 at 15.) As to the Petitioner's argument that third country removal is punitive, Judge

18  Fricke concluded this Court should expand the record to determine whether a punitive purpose

19  exists and whether an evidentiary hearing is warranted. (*Id.* at 17.) Respondents argue

20

21

22  [4] Because the Court finds that Petitioner's detention violates the Due Process Clause, and thus
    affords relief on that basis, it does not reach Petitioner's other causes of action. The Court,
23  however, will note that Petitioner has been detained over six months between his time in
    detention in 2022 and his current detention. Pursuant to *Zadvydas*, Petitioner would have an
24  avenue to pursue alternative relief.

ORDER ADOPTING IN PART AND DENYING IN PART REPORT AND RECOMMENDATION (DKT. NO. 12) - 14

1    Petitioner's third country removal claims are not ripe for review.  (Dkt. No. 15 at 5.)  The Court

2    agrees.

3         Though a habeas petition brought pursuant to 28 U.S.C. § 2241 is the proper mechanism

4    to challenge the legality of detention pending removal, *see Zadvydas*, 533 U.S. at 688, it cannot

5    be used to seek relief for claims that are speculative or otherwise not ripe for review.  *Thomas v.*

6    *Union Carbide Agr. Prods. Co.*, 473 U.S. 568, 580 (1985).  For a case to be ripe, the issues

7    presented must be "definite and concrete, not hypothetical or abstract."  *Thomas v. Anchorage*

8    *Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (citing *Railway Mail Ass'n v. Corsi*,

9    326 U.S. 88, 93 (1945)).  The ripeness doctrine "prevent[s] courts, through avoidance of

10   premature adjudication, from entangling themselves in abstract disagreements."  *Anchorage*

11   *Equal Rights Comm'n*, 220 F.3d 1134 at 1138 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136,

12   148 (1967)).  This is because the court's "role is neither to issue advisory opinions nor declare

13   rights in hypothetical cases, but to adjudicate live cases or controversies[.]"  *Anchorage Equal*

14   *Rights Comm'n*, 220 F.3d 1134 at 1138.  "[D]istrict courts properly decline to issue advisory

15   opinions or to declare rights in hypothetical cases rather than live cases or controversies."  *Tran*

16   *v. Bondi*, C25-01897-JLR, 2025 WL 3140462, at *4 (W.D. Wash. Nov. 10, 2025) (citing

17   *Anchorage Equal Rights Comm'n*, 220 F.3d at 1138).

18        Petitioner makes general assertions that Respondents have designed and implemented a

19   punitive practice of removing individuals to third countries without following procedures

20   required by law.  (Dkt. No. 2 at 33–34.)  But Petitioner did not respond to Respondents'

21   arguments that his fears of third country removal are speculative and has not explained why he

22   faces an individual threat of third country removal.  (*See generally* Dkt. No. 2.)  To the contrary,

23   Respondents have attested they have no intent to remove Petitioner to any country other than

24

Vietnam and have begun the process of securing travel documents for his removal to Vietnam. (Dkt. Nos. 8 at 5–6; 9 at 4.)  At this juncture, Petitioner's claims are too speculative to form a live controversy as to the third country removal issue.  *See Union Carbide*, 473 U.S. at 580; *Tran*, 2025 WL 3140462, at *4 (finding claims of third country removal not ripe where petitioner provided "no evidence that Respondents seek to remove him to a third country").  Thus, the Court declines to address Petitioner's argument regarding third country removal.

## V    CONCLUSION

The Court has reviewed Petitioner's responses (Dkt. Nos. 13, 16), Respondents' objections (Dkt. No. 15), Judge Fricke's R&R (Dkt. No. 12), Petitioner's petition for writ of habeas corpus (Dkt. No. 2), and the entire record *de novo*.  The Court ADOPTS in part and DENIES in part the R&R and ORDERS:

1. Petitioner's petition for writ of habeas corpus (Dkt. No. 2) is GRANTED.

2. Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them shall immediately release Petitioner from custody subject to the conditions of his December 30, 2022 Order of Supervision.

3. Petitioner shall not be re-detained without notice and an opportunity to be heard unless Respondents have evidence detention is authorized under 8 C.F.R. §§ 241.13(i)(1) or (2).  Per this Order, the evidence the Respondents presented in this matter is insufficient to meet the requirements of 8 C.F.R. §§ 241.13(i)(1) or (2).

4. Within **TWENTY-FOUR (24)** hours of this order, Respondents must provide the Court with a declaration confirming Petitioner has been released from custody.

1    The Clerk is directed to close the case and enter judgment.

2    Dated this 24th day of December, 2025.

3
4                                    _____
5                                    David G. Estudillo
                                     United States District Judge
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24